1
2
3
4
5
6
7
8      **UNITED STATES DISTRICT COURT**

9      **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   TRI-UNION SEAFOODS, LLC,                    CASE NO. 14CV2282-MMA (MDD)

12                            Plaintiff,         **ORDER DENYING DEFENDANT'S
                                                 MOTION TO DISMISS, OR IN THE
13         vs.                                   ALTERNATIVE, MOTION TO
                                                 TRANSFER**
14
                                                 [Doc. No. 4]
15   STARR SURPLUS LINES
     INSURANCE COMPANY,
16
                            Defendant.
17

18         Defendant Starr Surplus Lines Insurance Company ("Starr" or "Defendant")

19   moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), or

20   in the alternative, to transfer the action to the Southern District of New York

21   pursuant to 28 U.S.C. § 1404.  Plaintiff Tri-Union Seafoods, LLC, doing business as

22   Chicken of the Sea International ("Tri-Union" or "Plaintiff"), filed an opposition, to

23   which Defendant replied.  *See* Doc. Nos. 9, 11.  The Court found this matter suitable

24   for determination on the papers without oral argument pursuant to Civil Local Rule

25   7.1(d)(1).  For the reasons set forth below, the Court **DENIES** Defendant's motion

26   in its entirety.

27                                  B̲A̲C̲K̲G̲R̲O̲U̲N̲D̲

28         This action concerns an insurance dispute under Product Contamination

Insurance Policy No. SLSLCRM8202551 (the "Policy") issued by Defendant to Plaintiff for the period of November 15, 2011 to November 15, 2012.[1]  Plaintiff is a San Diego-based company that makes and markets canned seafood and other value-added seafood products.  The events giving rise to this dispute occurred on May 25, 2012, when the Food and Drug Administration ("FDA") issued a nationwide update regarding Korean molluscan shellfish, which purportedly caused Plaintiff to recall all of its oyster products sourced from the Korean shellfish shippers.

Plaintiff timely tendered its claim under the Policy for its loss resulting from the recall, which Defendant denied.  On September 26, 2014, Plaintiff filed this action in the Southern District of California, alleging Defendant improperly denied coverage of Plaintiff's insurance claim.  *See* Doc. No. 1 ("Compl.").  Plaintiff's complaint alleges claims for declaratory relief, breach of contract, breach of implied covenant of good faith and fair dealing, and unfair business practices in violation of California Business and Professions Code section 17200, *et seq.*

Defendant now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer this action under 28 U.S.C. § 1404 on the grounds that the Policy contains a valid, enforceable choice of law and forum provision, requiring any dispute under the Policy to be litigated in New York and under New York law.  Defendant further contends that Plaintiff has failed to state a claim for coverage under any provision of the Policy.

**DISCUSSION**[2]

---

[1] The Policy is attached to Tri-Union's complaint as Exhibit A.  *See* Doc. No. 1-2.

[2] Defendant requests that the Court take judicial notice of a printout from the FDA's website entitled Enforcement Report – Week of June 20, 2012.  *See* Doc. No. 4-2, Exh. B.  Plaintiff agrees with Defendant's request for judicial notice, and also requests that the Court take judicial notice of a different printout from the FDA website also regarding the Enforcement Report - Week of June 20, 2012.  *See* Doc. No. 8, Exh. A.  The Court finds judicial notice of these documents is proper pursuant to Federal Rule of Evidence 201(b), and therefore **GRANTS** the parties' respective requests for judicial notice.  *See In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (taking judicial notice of print outs from the FDA website because such

1  Defendant's argument appears to be three-fold.  First, Defendant asserts that
2  pursuant to the Policy's "Choice of Law and Forum" provision, the contractually
3  chosen forum to litigate this action is New York, and therefore the Court should
4  dismiss this action or transfer it to the Southern District of New York.  Second,
5  Defendant argues that because the same provision expressly provides that New York
6  law governs any claims or disputes arising under the Policy, Plaintiff's claims under
7  California law fail as a matter of law.  Finally, Defendant contends that Plaintiff has
8  failed to state a claim for which relief can be granted.

9  In response, Plaintiff asserts that the Service of Suit Endorsement to the
10  Policy modifies and supercedes the Policy's forum-selection clause.  Plaintiff further
11  contends that the Policy's choice-of-law clause is unenforceable, and therefore
12  California law applies.  Finally, Plaintiff avers that the complaint sufficiently alleges
13  all four causes of action.

14  The Court addresses each argument in turn.

15  **A.    *Forum***

16  At the outset, Defendant seeks to dismiss or transfer this action to the
17  Southern District of New York under 28 U.S.C. § 1404(a) on the grounds that the
18  Policy's forum selection clause requires the parties to litigate any dispute in New
19  York.  Plaintiff, however, asserts that because the Service of Suit Endorsement
20  modifies and supercedes the Policy's forum-selection clause, the Policy
21  contractually permits Plaintiff to file its complaint in this Court.

22  **1.    Legal Standard**

23  In *Atlantic Marine Construction Company, Inc. v. United States District Court*
24  *for the Western District of Texas*, 134 S. Ct. 568 (2013), the United States Supreme
25  Court clarified that a party may seek to enforce a forum selection clause through a

26
27
28  documents were "capable of accurate and ready determination" and "not subject to reasonable dispute" under Rule 201(b)).

motion to transfer under 28 U.S.C. § 1404(a).[3]  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to "prevent the waste of time, energy, and money to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted).  A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion for transfer of venue, the moving party must establish "that venue is proper in the transferor district; that the transferee district is one where the action might have originally been brought; and that transfer will serve the convenience of the parties and witnesses and will promote the interests of justice."  *Vu v. Ortho–McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1155–56 (N.D. Cal. 2009) (*quoting Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992)).  Once venue is determined to be proper in both districts, "[t]he Court must consider public factors relating to 'the interest of justice' and private factors relating to 'the convenience of the parties and witnesses.'"  *Decker Coal Co. v. Commonw. Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Such factors include: (1) plaintiff's choice of forum; (2) convenience of the parties and witnesses; (3) ease of access to the evidence; (4) familiarity of each forum with the applicable law; (5) feasibility of consolidation with other claims; (6) any local interest in the

---

[3] The Court also held that § 1406(a) and Rule 12(b)(3) permit dismissal only when venue is "improper" which turns exclusively on whether the court where the case was filed satisfies the requirements of federal venue laws, regardless of any forum-selection clause.  *See Atl. Marine Const. Co*, 134 S. Ct. at 578.  Here, Defendant does not assert that venue in this district is improper under federal venue laws.  Instead, it seeks to enforce the Policy's forum-selection clause.  Thus, pursuant to the Supreme Court's guidance in *Atlantic Marine*, the Court focuses its analysis on Defendant's motion to transfer under § 1404(a).

controversy; and (7) the relative court congestion and time of trial in each forum. *Vu*, 602 F. Supp. 2d at 1156.

In *Atlantic Marine*, the Supreme Court set forth that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id*. at 581. First, "the plaintiff's choice of forum merits no weight . . . . Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. at 581–82. Second, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests" but instead may only consider arguments regarding public-interest factors. *Id.* at 582. Finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* The Court reasoned that "[n]ot only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship." *Id.* at 583. A precursor to this analysis, however, is a contractually valid forum-selection clause. *See id.* at 581 n.5.

## 2.    Analysis

Defendant seeks to enforce the Policy's forum selection clause, which it contends requires the parties to litigate any dispute in New York. According to Defendant, the Service of Suit Endorsement has no impact on the Policy's original forum-selection clause, and therefore this Court should transfer this action to the agreed-upon forum of the Southern District of New York. Plaintiff argues that the Service of Suit Endorsement modifies and supercedes the Policy's forum-selection clause, thereby permitting Plaintiff to file its complaint in this Court. Thus, the interpretation and interplay of the Policy's "Choice of Forum" clause and the Service of Suit Endorsement is at issue.

It is well settled that in interpreting contracts, courts look first to the plain and ordinary meaning of the agreement.  *See, e.g., Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006) (applying California law); *Minerals Technologies, Inc. v. Omya AG*, 406 F. Supp. 2d 335, 337 (S.D.N.Y. 2005) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation.") (internal citation omitted).  A contract is ambiguous where, upon examining the contract as a whole, it is capable of two or more reasonable meanings.  *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 82 (2d Cir. 2001); *Perez-Encinas*, 468 F. Supp. 2d at 1133.  Importantly, however, "[i]f contractual language is clear and explicit, it governs." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992).  The Court therefore looks to the language of the agreement to determine whether it is unambiguous.

Here, the Policy contains two relevant provisions.  First, section 5.10 of the original Policy provides in relevant part:

> **Choice of Law and Forum**
> The construction, validity, and performance of this Policy will be governed by the laws of the State of New York.  The Insurer and the Insured hereby expressly agree that all claims and disputes will be litigated in the Supreme Court of the State of New York in and for the County of New York or in the U.S. District Court for the Southern District of New York.

*See* Policy at 15, § 5.10.   When read in isolation, this provision unambiguously designates New York as the parties' chosen forum to litigate disputes.

In addition, the Policy contains a Service of Suit Endorsement, which took effect on November 15, 2011 and provides in relevant part:

> This endorsement modifies the insurance coverage form(s) that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

> As used in this Endorsement, the "Company" refers to Starr Surplus Lines Insurance Company.

> This applies in California.

> It is agreed that in the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this

1   condition constitutes or should be understood to constitute a waiver of our
2   rights to commence an action in any court of competent jurisdiction in the
    United States, to remove an action to a United States District Court or to
3   seek a transfer of a case to another court as permitted by the laws of the
    United States or of any state in the United States.  It is further agreed that
4   service of process in such suit may be made upon General Counsel, Legal
    Department, Starr Surplus Lines Insurance Company, 399 Park Avenue,
5   New York, N.Y. 10022 or his or her representative, and that in any suit
    instituted against upon this contract, we will abide by the final decision of
6   such court or of any appellate court in the event of an appeal.

7   . . .

8   All other terms and conditions of this Policy remain unchanged.

9   *See* Doc. No. 1-2 at 24 ("the Endorsement").

10          When interpreting almost identical language in other service of suit

11   provisions, federal courts have consistently found such language unambiguously

12   permits the insured to choose which forum to bring suit.  *See, e.g.*, *Dinallo v. Dunav*

13   *Ins. Co.*, 672 F. Supp. 2d 368, 370 (S.D.N.Y. 2009) aff'd, 402 F. App'x 595 (2d Cir.

14   2010); *Perini Corp. v. Orion Ins. Co.*, 331 F. Supp. 453, 454 (E.D. Cal. 1971).  For

15   example, in *City of Rose City v. Nutmeg Insurance Company*, 931 F.2d 13, 15 (5th

16   Cir. 1991), the Fifth Circuit reasoned that where the insurer agreed to "submit to the

17   jurisdiction of any court," to "comply with all requirements necessary to give such

18   court jurisdiction," and to "abide by the final decision of such court," such language

19   "plainly requires that the insurer submit to the jurisdiction of any court of the

20   policyholder's choosing." *Id.* at 15.  More recently, district courts in the Ninth and

21   Second Circuits have reached the same conclusion based on similar reasoning.  *See,*

22   *e.g.*, *Dinallo*, 672 F. Supp. 2d at 370 ("This clause, by its terms, obliges the

23   defendant to 'comply with all requirements necessary to give such Court

24   jurisdiction' and 'abide by the final decision of such Court.'  The clause also

25   guarantees to the plaintiff . . . the right to choose 'any Court of competent

26   jurisdiction within the United States' in which to file suit . . ."); *Kashama v. Century*

27   *Ins. Grp.*, No. 09cv1298 SI, 2009 WL 1312940, at *2 (N.D. Cal. May 12, 2009)

28   ("Under the service of suit provision, defendant consented to the jurisdiction of any

court of competent jurisdiction requested by plaintiff—here, Alameda County Superior Court."); *Triad Mech., Inc. v. Coatings Unlimited, Inc.*, No. 07cv516-HU, 2007 WL 2713842, at *2 (D. Or. Sept. 12, 2007) ("[F]ederal courts have interpreted near-identical provisions as compelling the insurer to submit to the forum chosen by the insured who sues to recover proceeds owing under the policy."); *Perini Corp.*, 331 F. Supp. at 454 ("The meaning of the service of suit clause is generally clear.  It purports to compel the insurer to submit to the forum chosen by a dissatisfied policy holder who sues to recover proceeds owing under the policy.").

The Court finds the above reasoning persuasive.  Here, the Service of Suit Endorsement expressly provides that Defendant, at Plaintiff's request, "will submit to the jurisdiction of a court of competent jurisdiction within the United States" and "will abide by the final decision of such court or of any appellate court in the event of an appeal."  Thus, like the cases cited above, the Service of Suit Endorsement unambiguously provides for Plaintiff, as the policy holder, to choose the forum to bring suit.

Defendant attempts to distinguish this case on two grounds: first that removal is not at issue, and second that this Service of Suit Endorsement is distinguishable because it also contains the following clause:

> Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States . . .

*See* Doc. No. 1-2 at 24.  Both arguments are unavailing.  First, other federal courts have reasoned that by agreeing to "submit" to a policy holder's choice of forum, the chosen forum is binding on the parties—and thus generally precludes removal—unless the service of suit endorsement expressly reserves the insurer's right to remove the case to a different forum.  *See, e.g., Dinallo*, 672 F. Supp. at 370 (finding "[t]his service of suit clause operates as a waiver of the defendant's right to remove to federal court" where clause provides for the policyholder to

choose "any Court of competent jurisdiction within the United States" to file suit and requires the insured to cooperate with that choice); *Triad Mech.*, 2007 WL 2713842, at \*2 (recognizing that "[a] service of suit provision generally acts as a wavier of the insurer's right of removal") (internal citation omitted); *Perini Corp.*, 331 F. Supp. at 454, 455 ("While [a service of suit clause] does not in terms waive the insurer's right to remove to a federal forum, most courts have nonetheless determined that 'submission' to a state forum is a waiver of the insurer's right to defend in federal court. . . . Until the clause is changed, therefore, the parties are entitled to expect that the clause now means what it has always meant-that 'submission' to a state tribunal precludes removal to a federal court."). Thus, the fact that this case does not concern removal has absolutely no effect on Plaintiff's ability to choose the forum in the first place.

Further, Defendant's attempt to distinguish this case based on language regarding the insurer's right to commence, remove, or transfer this action is equally unavailing. Federal courts have recognized that an insurer may prevent the preclusive effect of a service of suit clause simply by including an express reservation of the insurer's right to remove or transfer the action to a different forum. *See, e.g.*, *Nutmeg*, 931 F.2d at 15 (recognizing that "[i]f the insurer desired to reserve the right to remove to federal court after the insured chose the state in which he desired to file suit, the insurer could simply have inserted a clause stating 'reserving the insurer's right to remove to federal court'") (internal citation omitted). Here, the additional clause cited by Defendant does exactly that—it simply reserves Defendant's right to seek removal or transfer of a case to a different forum *after* Plaintiff files suit in its chosen forum. It does not, however, alter or change Plaintiff's ability to choose the forum in the first place.

Finally, Defendant argues that this case is also distinguishable because the Policy contains both a Service of Suit provision and a forum-selection clause. Defendant further argues that although the forum-selection clause and the Service of

Suit Endorsement do not conflict, to the extent they do, the forum-selection clause controls because it was not changed or modified by the Service of Suit Endorsement. Thus, the Court must determine whether, when interpreted within the contract as a whole, the two provisions conflict and create an ambiguity.

As discussed above, the forum selection clause provides for New York as the designated forum, whereas the Service of Suit Endorsement unambiguously permits Plaintiff, as the policy holder, to choose the forum to bring suit. Thus, when read separately and in isolation, the two provisions appear to conflict. However, under both California and New York law, courts must interpret contracts as a whole and in a manner that does not render any clause or provision superfluous. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."); *Minerals Technologies*, 406 F. Supp. 2d at 337 ("Principles of contract interpretation require that a contract be interpreted in a manner that ascribes meaning to all provisions of the contract."); *Bank of the W.*, 2 Cal. 4th at 1265 ("[T]he court must interpret the language in context, with regard to its intended function in the policy. This is because language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.") (internal citations and quotations omitted).

In interpreting the Policy as a whole, it is clear from its plain language that the Service of Suit Endorsement modifies the Policy to permit Plaintiff to choose a forum to file suit. The Endorsement expressly states that: "This endorsement modifies the insurance coverage form(s) that have been purchased by you and evidence as such on the Declarations page." On the same page and immediately following the Service of Suit provision discussed above, the Endorsement further states: "All other terms and conditions of this Policy remain unchanged." By specifying that "other terms and conditions . . . remain unchanged," the Endorsement

1   further demonstrates that the terms and conditions listed directly above—including

2   "we, at your request will submit to the jurisdiction of a court of competent

3   jurisdiction within the United States"—in fact changed the original insurance

4   agreement.  Thus, the plain language of the Service of Suit Endorsement

5   unambiguously states in two separate places—both before and after the provision

6   providing that Defendant will "submit" to the forum of Plaintiff's choosing—that

7   the Endorsement changes the Policy to correspond with the Endorsement's

8   provisions.

9        Accordingly, the Court finds that upon interpreting the Policy as a whole, the

10  Service of Suit Endorsement modified the forum selection clause so that the plain

11  language of the Policy unambiguously permits Plaintiff to bring suit in a forum of its

12  choosing.  The Court therefore **DENIES** Defendant's motion to transfer under §

13  1404(a) on the grounds that Plaintiff violated the forum-selection clause.

14  **B.    Choice of Law**

15       Defendant seeks to dismiss Plaintiff's claim for unfair business practices in

16  violation of California Business and Professions Code section 17200, *et seq.* on the

17  grounds that the Policy's choice of law provision requires that New York law

18  applies to this dispute, and Plaintiff's claim is not cognizable under New York law.[4]

19  In response, Plaintiff argues that because California is the forum state, this Court

20  must apply California's choice-of-law analysis, under which the Policy's choice-of-

21  law provision is unenforceable because New York law is contrary to California's

22  fundamental public policy recognizing an insured's right to sue an insurer in tort for

23  breach of the implied covenant of good faith and faith dealing.  Plaintiff further

24  asserts that California has a materially greater interest in this dispute.  In its reply

25  brief, Defendant argues that because the forum-selection clause designates New

26  York as the chosen forum, New York law applies, which purportedly enforces

27  contractual choice-of-law provisions without a conflict-of-law analysis.  Defendant

28

---

[4] Defendant also suggests that Plaintiff brings all its claims under California law.

1    further argues that even under the California choice-of-law analysis, the Policy's

2    choice-of-law clause is enforceable.

### 1.   Legal Standard

4        "A federal court sitting in diversity ordinarily must follow the choice-of-law

5    rules of the State in which it sits." *Atl. Marine*, 134 S. Ct. at 582 (citing *Klaxon Co.*

6    *v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 494–96 (1941)).  Thus, a federal court in

7    California sitting in diversity must ordinarily follow California's choice-of law rules.

8     *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) ("In determining the

9    enforceability of a choice of law provision in a diversity action, a federal court

10    applies the choice of law rules of the forum state, in this case California.").

11        Courts recognize an exception to this general rule where an action is

12    transferred to a different court under § 1404(a).  In such cases, the state law

13    applicable in the original court also applies in the court where the action is

14    transferred.  *See Atl. Marine*, 134 S. Ct. at 582 (citing *Van Dusen v. Barrack*, 376

15    U.S. 612, 639 (1964)).  For example, where an action filed in federal court in

16    California is subsequently transferred to a federal court in a different state under §

17    1404(a), California's choice of law rules still apply in the transferee court.  *See id.*

18    The purpose behind this exception is to prevent a defendant from invoking § 1404(a)

19    to gain benefits under the laws of another jurisdiction.  *See id.*

20        However, in *Atlantic Marine*, the United States Supreme Court clarified that

21    this exception does not apply where a defendant seeks to transfer under § 1404(a)

22    based on enforcement of a valid forum-selection clause.  *See id.* at 583.  Thus,

23    "when a party bound by a forum-selection clause flouts its contractual obligation and

24    files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the

25    original venue's choice-of-law rules."  *Id.* at 583.  The court reasoned that to do

26    otherwise would be inequitable, encourage gamesmanship, and create additional

27    opportunities for forum shopping.  *Id.*

### 2.   Analysis

As an initial matter, the parties disagree as to which state's choice-of-law rules apply to this case—Defendant argues New York law applies, whereas Plaintiff argues California law applies.  In particular, Defendant asserts that pursuant to the *Atlantic Marine* decision, because the Policy contains a forum-selection clause designating New York as the chosen forum, New York's law—including its choice-of-law analysis—governs this case.  *See Atl. Marine*, 134 S. Ct. at 582.  The Court, however, finds Defendant's argument is foreclosed by this Court's ruling on forum.  As explained above, the forum-selection clause contained in the original agreement was modified by the Service of Suit Endorsement such that the plain language of the Policy permits Plaintiff to file suit in a forum of its choosing.  Plaintiff therefore did not "flout its contractual obligation" by filing suit in this district.  *See id.*  Thus, contrary to Defendant's argument, there is no proper basis for this Court to apply New York conflict-of-law rules to the dispute at hand.

Instead, because this Court has diversity jurisdiction over Plaintiff's state law claims, it must apply the choice-of-law rules of the forum state, here California.  *See Hatfield*, 564 F.3d at 1182.  "If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention . . ."  *Id.* (quoting *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436 n.7 (2007).  Here, the Policy's choice-of-law clause expressly provides that "[t]he construction, validity, and performance of this Policy will be governed by the laws of the State of New York."  *See* Policy § 5.10.[5]

The parties agree that under California law, the analysis set forth in *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992) governs the determination of whether a contractual choice-of-law clause is enforceable.  First, the party advocating application of the choice-of-law provision—here, Defendant—has the burden of establishing either (1) the chosen state has a substantial relationship to the

---

[5] The Court notes that Plaintiff does not argue that its claims are outside the scope of this provision.

parties or their transaction, or (2) another reasonable basis for the parties' choice of law.  *See Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 537 (C.D. Cal. 2013). If Defendant makes this showing, the burden then shifts to the party opposing enforcement of the choice-of-law provision—here, Plaintiff—to demonstrate "the chosen state's law is contrary to a *fundamental* policy of California" and that "California has a materially greater interest than the chosen state in the determination of the particular issue."  *See Washington Mut. Bank*, 24 Cal. 4th at 916 (emphasis in original).  Accordingly, "the parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue."  *Id.* at 917.

Here, Plaintiff does not dispute that the first element is met—that New York has a substantial relationship to the parties, or their transaction or a reasonable basis exists for the choice of New York law.  Moreover, the fact that Defendant has its principal place of business in New York satisfies the substantial relationship inquiry. *See Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) (finding the chosen state has a substantial relationship to the parties where the defendant is incorporated and has its principal place of business there).  Thus, pursuant to California law, the Court will enforce the choice-of-law provision unless Plaintiff can show both that (1) New York law is contrary to a fundamental policy of California, and (2) that California has a materially greater interest than New York in determining this dispute.  *See Washington Mut.*, 24 Cal. 4th at 917.

Plaintiff argues that New York law is contrary to a fundamental policy of California because it does not recognize an insured's right to sue an insurer in tort

for breach of the implied covenant of good faith.[6]  To carry its burden under the *Nedlloyd Lines* analysis, Plaintiff must show both that New York law is contrary to California law, and that California's recognition of tort liability for breach of the implied covenant of good faith and faith dealing implicates a *fundamental* policy of California.  *See*, *e.g.*, *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008) (finding even if there is a material difference between Texas and California law, the reliance requirement at issue did not implicate a fundamental policy of California).

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract."  *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal citation and quotation omitted).  New York courts therefore generally dismiss claims for breach of the implied covenant as duplicative where they arise from the same facts and seek the same damages as a claim for breach of contract.  *See*, *e.g.*, *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426 (2010).  Although under California law contract principles generally govern claims for breach of the implied covenant of good faith and faith dealing, an exception exists "in the context of insurance contracts where, for a variety of policy reasons, courts have held that breach of the implied covenant will provide the basis for an action in tort."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988).  Under this exception, "when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort."  *Id.*  "The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable."  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).

Notably, the Second Circuit has expressly found that "there is an actual conflict between the law of New York and the law of California" with regard to

---

[6] Plaintiff also asserts a similar argument with respect to its claim for unfair business practices in violation of California Business and Professions Code section 17200, *et seq*.  In light of the Court's conclusion below, it need not reach this argument.

claims for breach of implied covenant of good faith in the insurance context.  *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("However, in California, unlike in New York, [i]n insurance cases there is a well-developed history recognizing a tort remedy for a breach of the implied covenant where the insurer has acted unreasonably or without proper cause. . . . Thus, there is an actual conflict between the law of New York and the law of California.") (internal citations and quotations omitted).  Moreover, Defendant appears to acknowledge as much in its moving papers, stating "[u]nder New York law, courts have refused to recognize a common law cause of action for first-party insurer bad faith" and "[t]here is no independent cause of action in tort for punitive damages against an insurer under New York law."  *See* Def.'s Mot., Doc. No. 4-1 at 21.  Accordingly, New York law is contrary to California law on this issue.

Plaintiff cites to various public policy reasons for imposing tort liability against an insurer for bad faith, including that an insured seeks insurance not for economic advantage but to protect against calamity; insurance contracts are adhesive in nature; and without liability in tort, an insurer might deny a claim knowing it could only be liable for contractual damages.  Defendant, however, argues that New York law is not contrary to a *fundamental* policy in California.  In support of this proposition, Defendant cites the California Supreme Court's finding in *Nedlloyd Lines*:

> We perceive no fundamental policy of California requiring the application of California law to Seawinds's claims based on the implied covenant of good faith and fair dealing.  The covenant is not a government regulatory policy designed to restrict freedom of contract, but an implied promise inserted in an agreement to carry out the presumed intentions of contracting parties

*Nedlloyd Lines*, 3 Cal. 4th at 468.  However, the contract at issue in *Nedlloyd Lines* concerned a stock purchase agreement—not an insurance agreement—and therefore Defendant's argument is inapposite.

The Court must therefore determine whether California's recognition of tort liability in the insurance context for breach of the implied covenant of good faith and

fair dealing is a fundamental policy of California.[7]  California courts have recognized that there are no "bright line rules for determining what is and what is not contrary to a fundamental policy of California."  *See Discover Bank v. Superior Court*, 134 Cal. App. 4th 886, 893 (2005).  "To be fundamental within the meaning of Restatement section 187, a policy must be a substantial one." *Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1323 (2008).  Additionally, "a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.  Statutes involving the rights of an individual insured as against an insurance company are an example of this sort."  Comment (g) to Restatement (Second) of Conflict of Laws § 187 (1971).

The California Supreme Court has acknowledged a "well-developed judicial history" recognizing that "when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort."  *Foley*, 47 Cal. 3d at 684.  The court has further recognized that "tort recovery in this particular context is considered appropriate for a variety of policy reasons."  *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 44 (1999).  "Unlike most other contracts for goods or services, an insurance policy is characterized by elements of adhesion, public interest and fiduciary responsibility."  *Id.*

The California Supreme Court has recognized the "special relationship" of the insured and insurer.  *Foley*, 47 Cal. 3d at 687.  As the court explained:

> A fundamental disparity exists between the insured, which performs its basic duty of paying the policy premium at the outset, and the insurer, which, depending on a number of factors, may or may not have to perform its basic duties of defense and indemnification under the policy. . . .An insured is thus not on equal footing with its insurer—the relationship between insured and insurer is inherently unequal, the inequality resting on contractual asymmetry.  An insurer's tort liability for breach of the covenant is thus predicated upon special policy factors inapplicable to the insured.

*Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 404-05 (June 22,

---

[7] Neither party has cited to a case addressing this issue.

2000), as modified (July 26, 2000).  In other words, "the relationship of insurer and insured is inherently unbalanced: the adhesive nature of insurance contracts places the insurer in a superior bargaining position." *Foley*, 47 Cal. 3d at 685.  In addition, "[i]n the insurance relationship, the insurer's and insured's interest are financially at odds.  If the insurer pays a claim, it diminishes its fiscal resources." *Id.* at 693.

The California Supreme Court has also recognized that insurance contracts are unique based on their purpose.  "[I]n general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of an accident or other catastrophe." *Cates*, 21 Cal. 4th at 44; *see also Foley*, 47 Cal. 3d at 684–85 ("The insured in a contract like the one before us does not seek to obtain a commercial advantage by purchasing the policy - rather, he seeks protection against calamity.").  Thus, the court reasoned that "[t]he availability of tort remedies in the limited context of an insurer's breach of the covenant advances the social policy of safeguarding an insured in an inferior bargaining position who contracts for calamity protection, not commercial advantage." *Kransco*, 23 Cal. 4th at 400.  As another California court explained:

> These special duties, at least to the extent breaches thereof give rise to tort liability, find no counterpart in the obligations owed by parties to ordinary commercial contracts.  The rationale for the difference in obligations is apparent.  If an insurer were free of such special duties and could deny or delay payment of clearly owed debts with impunity, the insured would be deprived of the precise benefit the contract was designed to secure (i.e., peace of mind) and would suffer the precise harm (i.e., lack of funds in times of crisis) the contract was designed to prevent. . . . To avoid or discourage conduct which would thus frustrate realization of the contract's principal benefit (i.e., peace of mind), special and heightened implied duties of good faith are imposed on insurers and made enforceable in tort. While these "special" duties are akin to, and often resemble, duties which are also owed by fiduciaries, the fiduciary-like duties arise because of the unique nature of the insurance contract, not because an insurer is a fiduciary.

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1148 (1990).

Finally, the insurance context is also distinct based on the lack of remedies available to an insured upon an insurer's breach.  As the California Supreme Court has explained, "[a]n insured faces a unique 'economic dilemma' when its insurer

1   breaches the implied covenant of good faith and fair dealing. . . .Unlike other parties

2   in contract who typically may seek recourse in the marketplace in the event of a

3   breach, an insured will not be able to find another insurance company willing to pay

4   for a loss already incurred." *Cates*, 21 Cal. 4th at 44.  Thus, California courts have

5   consistently recognized that "[i]n the insurance policy setting, an insured may

6   recover damages not otherwise available in a contract action, such as emotional

7   distress damages resulting from the insurer's bad faith conduct . . . and punitive

8   damages if there has been oppression, fraud, or malice by the insurer." *Id.* at 43–44

9   (internal citations omitted).  Moreover, "[t]he availability of punitive damages is

10  thus compatible with recognition of insurers' underlying public obligations and

11  reflects an attempt to restore balance in the contractual relationship." *Egan*, 24 Cal.

12  3d at 819.  Based on these various and unique policies underpinning this insurance

13  contract exception, the Court finds that recognizing a tort remedy for the an insurer's

14  breach of the implied covenant of good faith and faith dealing implicates a

15  substantial and thus fundamental public policy in California.

16       Finally, the Court must consider whether California has a materially greater

17  interest than New York in resolution of this issue.  *See Nedlloyd Lines*, 3 Cal. 4th at

18  466.  "To determine whether California has a materially greater interest than [New

19  York] [the Court] must analyze the following factors: (1) the place of contracting;

20  (2) the place of negotiation of the contract; (3) the place of performance; (4) the

21  location of the subject matter of the contract; and, (5) the domicile, residence,

22  nationality, place of incorporation, and place of business of the parties." *Ruiz*, 667

23  F.3d at 1324.  Additionally, courts "must consider which state, in the circumstances

24  presented, will suffer greater impairment of its policies if the other state's law is

25  applied." *Brack,* 164 Cal. App. 4th at 1329; *see also Ruiz*, 667 F.3d at 1324.

26       Here, it appears that the parties negotiated and delivered the Policy in

27  California, and any performance under the policy was to take place in California.

28  Further, the underlying recall and resulting loss at issue occurred in California.

Finally, although Plaintiff is a wholly owned subsidiary of a foreign company, it is formed under California law with its principal place of business in California, whereas Defendant is domiciled in Illinois and has its principal place of business in New York.  With the exception of Defendant's principal place of business, these factors support the conclusion that California has a materially greater interest in resolution of this dispute.  Further Defendant does not argue, and there is nothing before the Court to suggest, that New York will suffer greater impairment of its policies if California law is applied.  *See Ruiz*, 667 F.3d at 1324–25 (considering the fact that the defendant had not produced evidence to suggest Georgia had a material greater interest in the case).  Upon weighing these factors, the Court finds Plaintiff has demonstrated that California has a materially greater interest than New York in resolution of whether Defendant has breached the implied covenant of good faith and fair dealing.

The Court finds that Plaintiff has met its burden of demonstrating under California's choice-of-law analysis that New York law is contrary to a fundamental policy in California, and that California has a materially greater interest in resolution of this issue.  Accordingly, the Court finds that the Policy's choice-of-law provision is unenforceable, and that the law of California applies to the Policy.  *See Ruiz*, 667 F.3d at 1325.

### C.      *Dismissal under Fed. R. Civ. P. 12(b)(6)*

Finally, Defendant moves to dismiss all four claims on the grounds that Plaintiff has failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  In response, Plaintiff argues that it has sufficiently pled all four causes of action to survive a motion to dismiss.

#### 1.      Factual Background

The Policy provides for insured events in relevant part as follows:

#### 1.      Insured Events

The Insurer will reimburse the Insured for its Loss excess of the applicable Self-Insured Retention, but not exceeding the limits of liability stated on

the Declaration Page, caused by or resulting from any of the following **Insured Events** first discovered during the **Policy Period** and reported to the Insurers in writing in accordance with Condition 5.22 Notice of Loss, during the **Policy Period** or up to thirty (30) days after non-renewal of the Policy, provided that as of inception of this insurance the **Insured** were not aware and could not reasonably have been aware of circumstances which could produce **Loss** under this Policy.

## 1.1.  Accidental Contamination

Any accidental or unintentional contamination, impairment or mislabeling of **Insured Product(s),** which occurs during or as a result of its production, preparation, processing, manufacture, labeling (including instructions for use), processing, packaging, mixing, blending, compounding or distribution, or **Adverse Publicity** implying such; provided that the use or consumption of such **Insured Product(s):**

    (i)    has resulted in or would result in clear, identifiable, internal or external visible physical symptoms of **Bodily Injury** within three hundred and sixty five (365) days following such consumption or use or

    (ii)    has caused or would cause **Property Damage** other than damage to or destruction of **Insured Product(s).**

## 1.2  Governmental Recall

Any accidental or unintentional contamination, impairment or mislabeling of **Insured Product(s)** which occurs during or as a result of its production, preparation, processing, manufacture, labeling (including instructions for use), processing, packaging, mixing, blending, compounding or distribution that causes the **Insured Product(s)** to be injurious to health or unfit for human consumption and as a result:

    (i)    an official recall order has been issued by the competent authorities; or

    (ii)    a recall order by the competent authority is imminent in order to comply with regulations on food safety.

The Policy at 5.

On May 25, 2012, the FDA advised that it removed all Korean certified shippers of molluscan shellfish (oysters, claims, mussels, and scallops) from the Interstate Certified Shellfish Shippers List, and that it determined the Korean Shellfish Sanitation Program no longer met the National Shellfish Sanitation Program's sanitation requirements.  Additionally, the FDA also advised that the molluscan shellfish harvested from Korean waters may have been exposed to human

fecal waste and potentially contaminated with the norovirus because of inadequate sanitation controls, and therefore recommended that all food distributors remove from sale all processed (including canned) Korean molluscan shellfish.

In response to this update, Plaintiff recalled all of its oyster products sourced from the Korean shellfish shippers.  In doing so, Plaintiff incurred losses in excess of $500,000.  Plaintiff further alleges that the FDA advised "that it agreed with the decision to implement the Recall and described the Recall as 'an alternative to a Food and Drug Administration legal action to remove your defective product from the market.'"  Compl. at ¶ 14.

According to Plaintiff, it timely tendered its claim of loss to Defendant. Plaintiff further alleges that it satisfied all terms and conditions of the Policy that apply to it.  However, Defendant denied coverage of Plaintiff's claim.  According to Plaintiff, Defendant unreasonably interpreted the Policy and has taken "positions contrary to controlling law."  Compl. ¶ 34.

### 2.    Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to

the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

When ruling on a motion to dismiss, a court may resolve contractual claims where the contract terms are unambiguous. *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084 (N.D. Cal. 2012). However, if a contract provision is capable of two or more reasonable interpretations, the provision is ambiguous, and the court should deny the motion to dismiss. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008).

### 3. Analysis

#### a. Breach of Contract

To state a claim for breach of contract under California law, the plaintiff must allege the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado,* 158 Cal.

App. 4th 1226, 1239 (2008); *Keen v. Am. Home Mortgage Servicing, Inc.*, 664 F. Supp. 2d 1086, 1099 (E.D. Cal. 2009). Defendant does not contest (1) the existence of a contract, (2) Plaintiff's performance or excuse for nonperformance, or (4) that Plaintiff suffered damages. Instead, Defendant argues that Plaintiff's claim for breach of contract fails because there is no coverage under either the "Accidental Contamination" or the "Government Recall" provisions, and therefore Defendant did not breach the contract by denying Plaintiff's claims.

Defendant asserts that Plaintiff has failed to allege a claim for coverage under the "Accidental Contamination" provision because Plaintiff merely alleges potential contamination, and such purported contamination occurred prior to Plaintiff obtaining the products. Additionally, Defendant claims that Plaintiff altogether fails to allege bodily injury resulting from the contamination.

The Policy provides in relevant part:

> Any accidental or unintentional contamination, impairment or mislabeling of Insured Product(s), which occurs during or as a result of its production, preparation, processing, manufacture, labeling (including instructions for use), processing, packaging, mixing, blending, compounding or distribution, or Adverse Publicity implying such; provided that the use or consumption of such Insured Product(s):
>
> (i)     has resulted in or would result in clear, identifiable, internal or external visible physical symptoms of Bodily Injury within three hundred and sixty five (365) days following such consumption or use . . .

The Policy defines "Bodily Injury" as "(i) death, or (ii) clear, identifiable, internal or external visible physical symptoms of injury, sickness or disease sustained by a person." The Policy § 3.2. However, the Policy does not define contamination. Thus, both parties agree that in order for Plaintiff to state a claim for coverage under the Accidental Contamination provision, Plaintiff must allege: (1) accidental or unintentional contamination, (2) which occurred during or as a result of its production, preparation . . . or **Adverse Publicity** implying such, and (3) that use or consumption of which would result in clear, identifiable, or external visible physical symptoms of **Bodily Injury**.

Here, Plaintiff alleges that in the FDA's May 25, 2012 update, the FDA advised that molluscan shellfish harvested from Korean waters may have been exposed to human fecal waste and potentially contaminated with norovirus because of inadequate sanitation controls. Plaintiff further alleges that the FDA recommended that all food distributors remove all processed Korean molluscan shellfish, including canned products as well as any product subsequently made with them, from sale. Additionally, Plaintiff alleges that after it recalled its products from the market, it received confirmation from the FDA that the FDA agreed with Plaintiff's decision to do so and described the Plaintiff's recall efforts as "an alternative to a Food and Drug Administration legal action to remove your defective product from the market." *See* Compl. ¶ 14. Further, the FDA Enforcement report notes the reason for recall is that "the products have been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." *See* Doc. Nos. 4-1, 8. The Court finds that, at this stage of the litigation, these factual allegations and the reasonable inferences drawn from these allegations are sufficient to allege (1) "accidental or unintentional contamination," (2) "which occurred as a result of its production, preparation, processing, manufacture . . . or distribution," (3) that "would result in clear, identifiable, internal or external visible symptoms."

Defendant makes various arguments to the contrary, including that "the case law addressing product contamination policies uniformly provides that there be actual – not possible or potential – contamination for there to be coverage." *See* Def.'s Mot., Doc. No. 4-1 at 14–15. However, all the cases cited by Defendant were decided on summary judgment—not at the motion to dismiss stage—and therefore are distinguishable. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Determining whether a complaint states a plausible claim for relief will, . . .be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.").

The Court finds that Plaintiff states a claim for breach of contract and therefore **DENIES** Defendant's motion to dismiss this claim.[8]

### b.  Breach of Implied Covenant of Good Faith and Fair Dealing

To state a claim "for breach of the implied covenant of good faith and fair dealing in the denial of coverage context, the plaintiff must show that (1) benefits due under the policy were withheld, and (2) the reason for withholding benefits was unreasonable or without proper cause." *Align Tech., Inc. v. Fed. Ins. Co.*, 673 F. Supp. 2d 957, 965 (N.D. Cal. 2009) (quoting *Love*, 221 Cal. App. 3d at 1151) (internal quotations omitted); *see also R & R Sails, Inc. v. Ins. Co. of State of Pennsylvania*, 610 F. Supp. 2d 1222, 1230 (S.D. Cal. 2009).  In other words, "Plaintiff must establish that Defendant's actions both breached the contract ***and*** the actions, taken in bad faith, frustrated the actual benefits of the contract." *Martinez v. Infinity Ins. Co.*, 714 F. Supp. 2d 1057, 1063 (C.D. Cal. 2010) (emphasis in original).  "In first party insurance cases, the implied covenant of good faith and fair dealing is breached only if the denial or delay in provision of benefits is unreasonable." *Id.* (citing *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007)).

Here, as set forth above, Plaintiff states a claim for breach of contract, and therefore also sufficiently alleges the first element of a claim for the breach of implied covenant of good faith and fair dealing.  As to the second element, Plaintiff alleges in the complaint that Defendant "assert[ed] unreasonable interpretations of the Policy with the intention of depriving TRI-UNION of rights and benefits due to

---

[8]   In light of this conclusion, the Court need not address whether Plaintiff alternatively states a claim for breach of the Policy's "Government Recall" provision.  Additionally, because Plaintiff states a claim for breach of contract, the Court also finds Plaintiff states a claim for declaratory relief at this stage of the litigation. *See CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1070, 1073 (S.D. Cal. 2011) ("[I]n order for a court to grant declaratory relief, the actual controversy between the parties must relate to a claim upon which relief can be granted.") (internal citations and quotations omitted).  Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for declaratory relief.

TRI-UNION under the Policy."  Compl. ¶ 34.  Plaintiff further alleges that in denying Plaintiff's claim, Defendant has taken "coverage positions contrary to controlling law."  *Id.*  The Court finds that Plaintiff has sufficiently alleged that Defendant withheld benefits unreasonably or without proper cause.  *See Align Tech.,* 673 F. Supp. 2d at 965.  Accordingly, the Court finds Plaintiff has stated a claim for breach of the implied covenant of good faith and fair dealing under California law and therefore **DENIES** Defendant's motion to dismiss this claim.

### c.   Unfair Business Practices

California's Unfair Competition Law ("UCL") prohibits unlawful, unfair, and fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200 et seq.; *Wolfe v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 554, 558 (1996).  The law is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law."  *Cel–Tech Communs., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  The UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable."  *Id.*

Here, Plaintiff alleges that Defendant engaged in "unlawful, unfair, wrongful, and/or fraudulent business practices" based on its claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of California Insurance Code section 790.03(h).  Defendant moves to dismiss Plaintiff's UCL claim solely on the ground that Plaintiff has not sufficiently alleged Defendant's purported wrongdoing because it correctly denied coverage.  Because this claim is directly derivative of Plaintiff's other claims which have been sufficiently alleged for purposes of this motion to dismiss, the Court finds Plaintiff has also stated a claim for unfair business practices.  *See*, *e.g.*, *Balasanyan v. Nordstrom, Inc*., 913 F. Supp. 2d 1001, 1010 n.9 (S.D. Cal. 2012) (finding UCL claims survived because they were derivative of the plaintiff's other surviving claims); *see also Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 977 (N.D.

Cal. 2012).  Accordingly the Court **DENIES** Defendant's motion to dismiss this claim.

**C**ONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's motion to dismiss, or in the alternative, to transfer under 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

DATED:  February 5, 2015

Hon. Michael M. Anello
United States District Judge